UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Clayton Francis Marshalek,

                    Petitioner,                    Court File No. 20-cv-628 (PAM/LIB)

        v.

                                                   **REPORT AND RECOMMENDATION**

Paul Schnell,

                    Respondent.

This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon Petitioner Clayton Francis Marshalek's Petition for Writ of Habeas Corpus, [Docket No. 1].

For the reasons discussed herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that this action be **DISMISSED with prejudice.**

I.    **BACKGROUND AND UNDERLYING STATE COURT PROCEEDINGS**

On February 28, 2020, Petitioner, a Minnesota state correctional facility inmate, filed with this Court a petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody challenging the constitutionality of various aspects of his underlying court proceedings. (See, Pet. [Docket No. 1]).

The Minnesota Court of Appeals has reported the following details about the events underlying Petitioner's criminal charges, as well as, his trial and convictions:

> Appellant Clayton Marshalek and H.M. are married and have three daughters: K.M.; victim M.M., born June 16, 2002; and A.M. On March 1, 2017, M.M. told personnel at her school that she did not want to go home because Marshalek had been sexually touching her. School personnel contacted law enforcement, and M.M. gave investigating officers a recorded statement. Based on M.M.'s statements, respondent State of Minnesota charged Marshalek with two counts of second-degree criminal sexual conduct (CSC) under Minn. Stat. §

609.343, subds. 1(b), (h) (2016), and subsequently amended its complaint to add one count of first-degree CSC under Minn. Stat. § 609.342, subd. 1(b) (2016).

Before trial, the state moved the district court to admit K.M.'s testimony that Marshalek had previously filmed her in the bathroom and her bedroom. The court granted the motion. At Marshalek's jury trial, M.M. testified that Marshalek touched her "inappropriately" on her "private parts," her "boobs, butt, [and] vagina." M.M. also testified that Marshalek "finger[ed]" her through her clothing by pressing his fingers against her vagina. M.M. also recounted an incident on February 27, 2017, when Marshalek "started fingering" her "and stuff . . . he was pushing. Trying to get in," and that she kept telling him to "stop . . . [i]t hurts . . . I still have my virginity." M.M. testified that this occurred more than ten times and resulted in her getting "a wedgy, but in front." M.M. also testified that Marshalek once came into the bathroom while she showered to film her with his phone.

M.M.'s school counselor, the school's resource officer, two child-protection workers, K.M., A.M., the school social worker, and the two investigating officers, including Detective Strusinski, also testified for the state. And the district court admitted numerous exhibits into evidence, including recordings of M.M.'s prior out-of-court statements to investigating officers, and a call from Marshalek to M.M., urging her to recant her statement and not to testify. At the close of the state's case, Marshalek moved for judgment of acquittal, arguing that the state failed to prove the element of sexual penetration. The court denied the motion.

Marshalek testified on his own behalf. He claimed that he put a camera in the bathroom and in K.M.'s bedroom to catch her in the act of taking inappropriate photos of herself on her cellphone. He denied inappropriately touching M.M. and claimed that he only tickled her. He testified that on February 27, 2017, M.M. had been upset with him for scolding her about her outfit.

The jury found Marshalek guilty on all three counts and found the presence of three aggravating factors. The district court sentenced Marshalek to 172 months' imprisonment, a top-of-the-box presumptive sentence, with ten years of conditional release for the first-degree CSC count.

State v. Marshalek, No. A17-1833, 2018 WL 4855406, at *1–2 (Minn. Ct. App. Oct. 8, 2018).

Petitioner was represented by counsel throughout the state court appeal, and Petitioner's appellate counsel argued that: (1) the state presented insufficient evidence to establish the element of sexual penetration; (2) the Minnesota state district court "erroneously instructed the jury on the penetration element, defining penetration as 'any object *held*,' not 'any object *used*;'" (3) the Minnesota state district court "erred by admitting K.M.'s testimony that he had filmed her while

in the bathroom and in her bedroom because it represents improper evidence of 'domestic conduct,' under Minn. Stat. § 634.20 (2016);" and (4) the Minnesota state district court "erred by 'allowing the state to introduce irrelevant and prejudicial evidence that . . . M.M. reported to a school counselor that she was depressed and had thoughts of harming herself[,] and that . . . Marshalek had viewed teen-themed pornography videos.'" Id. at *2–6 (emphasis in original).

In affirming the state district court's decision, the Minnesota Court of Appeals first considered Petitioner's argument "the state did not establish the element of penetration." Id. at *2. The Minnesota Court of appeals noted that Petitioner's "sufficiency-of-the-evidence claim turn[ed] on the meaning of the statute under which . . . [he was] convicted," and the court rejected Petitioner's argument that "he could not be guilty of first-degree [criminal sexual conduct] because 'inserting his finger into [the victim] through her clothing does not fall within the definition of "sexual penetration."'" Id. The Minnesota Court of Appeals then considered M.M.'s testimony and found that "M.M.'s testimony shows that Marshalek made 'an intrusion, however slight' of M.M.'s 'genitals' with his fingers." Id. Accordingly, the Minnesota Court of Appeals held that "[b]ecause M.M.'s testimony supports a finding that Marshalek sexually penetrated her, . . . the evidence was sufficient to sustain his conviction." Id.

The Minnesota Court of Appeals next considered Petitioner's argument that the Minnesota state district court "erroneously instructed the jury on the penetration element, defining penetration as 'any object held,' not 'any object used.'" Id. at *3 (emphasis in original). The Minnesota Court of Appeals noted that "[t]he definition [in the jury instructions] of 'sexual penetration' matches the definition of 'sexual penetration' provided by Minn. Stat. § 609.341, except the instructions use the phrase 'any object held,' whereas the statute uses the phrase 'any object used.'" Id. (emphasis in original). After noting that it "ha[d] already decided that 'sexual penetration' occurs

3

when a person puts his or her finger into a victim's vagina through her underwear," the Minnesota Court of Appeals held "that the district court did not abuse its broad discretion in using the . . . jury instructions and therefore did not plainly err." Id. The Minnesota Court of Appeals further held that "even if the district court erred with its jury instructions by using 'object held' rather than 'object used' when defining 'sexual penetration.' The error did not affect Marshalek's substantial rights because the evidence presented at trial was that he used his finger to sexually penetrate M.M.'s vagina, not an 'object.'" Id.

Next, the Minnesota Court of Appeals considered Petitioner's argument that the Minnesota state district court "erred by admitting K.M.'s testimony that he had filmed her while in the bathroom and in her bedroom because it represents improper evidence of 'domestic conduct,' under Minn. Stat. § 634.20 (2016)." Id. at *4–5. The Minnesota Court of Appeals noted that "'Domestic conduct' includes, but is not limited to evidence of . . . violation of section 609.749 [the stalking statute]." Id. at *4 (alterations in original) (quoting Minn. Stat. § 634.20). The Minnesota Court of Appeals held that "[b]ased on the plain meaning of the terms in the stalking statute, Marshalek's filming of K.M. m[et] the definition of 'domestic conduct,' because it is evidence of a violation of the stalking statute." Id. The Minnesota Court of Appeals further held that the state district court "properly instructed the jury with cautionary instructions regarding K.M.'s testimony." Id.

Moreover, the Minnesota Court of Appeals noted that "[t]he district court admitted K.M.'s testimony as relationship evidence because it constituted 'domestic abuse' under Minn. Stat. § 518B.01, subd. 2(a)(3) (2016), which includes in its definition 'criminal sexual conduct,' within the meaning of section 609.342 [or] 609.343," and the Minnesota Court of Appeals found that "[e]ven if Marshalek's filming of K.M. does not meet the definition of 'criminal sexual conduct,'

it nonetheless meets the definition of stalking and is therefore admissible." <u>Id.</u> at *5. Therefore, the Minnesota Court of Appeals held that the state district court "did not err by admitting K.M.'s testimony as domestic conduct under Minn. Stat. § 634.20." <u>Id.</u>[1]

Lastly, the Minnesota Court of Appeals considered Petitioner's argument that the state district court "erred by 'allowing the state to introduce irrelevant and prejudicial evidence that (1) M.M. reported to a school counselor that she was depressed and had thoughts of harming herself; and that (2) Marshalek had viewed teen-themed pornography videos.'" <u>Id.</u> at *5–6. The Minnesota Court of Appeals noted that "Marshalek's defense focused on discrediting M.M., claiming that she fabricated her story to combat his strict rules," and "[t]his case therefore largely turned on credibility determinations by the jury." <u>Id.</u> at *6. Accordingly, the Minnesota Court of Appeals held that the at-issue "testimony corroborate[d] M.M.'s testimony against Marshalek's defense that she was fabricating the events, and [wa]s therefore relevant." <u>Id.</u> The Minnesota Court of Appeals further held "that the probative value of the challenged evidence outweighed its potential for unfair prejudice." <u>Id.</u> Thus, the Minnesota Court of Appeals affirmed Marshalek's convictions.

On November 6, 2018, Petitioner requested review of the state appellate court decision by the Minnesota Supreme Court. (Pet. for Review of Court of Appeals' Decision [Docket No. 6-5]). Petitioner, through his appellate counsel, argued that: (1) the evidence was insufficient to establish the element of penetration because M.M.'s underwear should not "be considered an 'object' sufficient to establish the element of penetration for purposes of the criminal sexual conduct in the first degree statute;" (2) the Minnesota state district court erred "in its instructions to the jury by incorrectly defining 'sexual penetration' as including 'any object <u>held</u>' by one person when the

---

[1] The Minnesota Court of Appeals noted that Petitioner "also argue[d] that the district court erroneously admitted this evidence as improper <u>Spreigl</u> evidence." <u>Id.</u> at *5. However, the Minnesota Court of Appeals found that it was not necessary to address Petitioner's <u>Spreigl</u> argument "[b]ecause the court did not err in admitting this evidence as relationship evidence under Minn. Stat. § 634.20." <u>Id.</u>

statute defines 'sexual penetration' to include 'any object <u>used</u>' by a person;" (3) K.M.'s testimony that Petitioner had secretly filmed her should not have been admitted as "'domestic conduct' under the relationship evidence statute, Minn. Stat. § 634.20;" and (4) the Minnesota state district court "err[ed] and violate[d] petitioner's right to a fair trial by allowing the state to introduce irrelevant and prejudicial evidence that: 1) the complainant reported to a school counselor that she was depressed and had thoughts of harming herself; and that 2) petitioner had viewed teen-themed pornography videos." (<u>See</u>, <u>Id.</u> at 4–5, 10–14).

On December 18, 2018, the Minnesota Supreme Court denied Petitioner's request for further review. (Ex. 5 [Docket No. 6-6]). Judgement was entered on December 26, 2018. (Ex. 6 [Docket No. 6-7]).

## II.    MARSHALEK'S PETITION FOR WRIT OF HABEAS CORPUS. [Docket No. 1].

On February 28, 2020, Petitioner filed in this Court his petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. (Pet. [Docket No. 1]). Petitioner presently asserts four grounds for granting the writ: (1) "[t]he evidence was insufficient as a matter of law to convict [Petitioner] of first degree criminal sexual conduct where the state's evidence did not establish the element of penetration;" (2) the Minnesota state district court erred "in its instructions to the jury by incorrectly defining 'sexual penetration' as including 'any object held' by one person when the statute defines 'sexual penetration' to include 'any object <u>used</u> by a person;'" (3) the Minnesota state district court erred "by admitting unfairly prejudicial <u>Spreigl</u> and relationship evidence that [Petitioner] filmed the victim's older sister in the bathroom and her bedroom when the claimed acts of filming were not markedly similar to the charged offense against the victim, where the potential for unfair prejudice greatly outweighed any probative value, and where the filming was not domestic conduct under Minn. Stat. § 634.20;" and (4) the Minnesota state district

court "err[ed] and violated [Petitioner's] right to a fair trial by allowing the state to introduce irrelevant and prejudicial evidence that: 1) the victim reported to a school counselor that she was depressed and had thoughts of harming herself; and that 2) [Petitioner] had viewed teen-themed pornography videos." (Id.).

## III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for all § 2254 habeas actions. 28 U.S.C. 2244(d)(1). The one-year period begins on the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

If a habeas petition is timely filed, then "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The AEDPA establishes that federal courts are to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007). Moreover, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. See, Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" refers to the holdings, but not the dicta, of United States Supreme Court opinions released prior to the date on which the state court issued its decision. See, Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102–03 (D. Minn. 2008), aff'd, 575 F.3d 785 (8th Cir. 2009). An "unreasonable application" of federal law occurs when the state court identifies the correct governing legal rule but then applies it unreasonably to the petitioner's case. See, Williams, 529 U.S. at 408–09. A federal court "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). The petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

Federal district courts may not conduct de novo review of a prisoner's constitutional claims. See, Yarborough v. Alvarado, 541 U.S. 652, 665 (2004). Rather, the AEDPA imposes a highly deferential standard which demands that the state court decisions be given the benefit of

the doubt. See, Renico v. Lett, 559 U.S. 766, 773 (2010). When reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). This exhaustion of state remedies requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged federal law errors raised by state prisoners. O'Sullivan, 526 U.S. at 844; Duncan v. Henry, 513 U.S. 364, 365–66 (1995) (per curiam); Lundy, 455 U.S. at 518–19; Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988).

## IV.    ANALYSIS

As a threshold matter, the Court finds that the present Petition was filed within the one-year statute of limitations established by the AEDPA. The Minnesota Supreme Court denied Petitioner's request for further review on December 18, 2018, and the Minnesota Court of Appeals entered judgment on December 26, 2018. (See, Ex. 5 [Docket No. 6-6]; Ex. 6 [Docket No. 6-7]). Under United States Supreme Court Rule 13.1, "[a] petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." Therefore, the limitations period began to run on March 26, 2019, (ninety days after the Minnesota Court of Appeals entered judgment on December 26, 2018). See, Sup. Ct. R. 13.1; see also, DiMartino v. Titus, 19-cv-0427 (JRT/SER), 2019 WL 2360900, at *5 n.4 (D.

Minn. Apr. 17, 2019), report and recommendation adopted by 2019 WL 2357047 (D. Minn. June 4, 2019). Petitioner filed his present petition for writ of habeas corpus on February 28, 2020, within the one-year limitations period under the AEDPA. (See, Pet. [Docket No. 1]).

### A.  Procedurally Defaulted Claims

#### i.  Ground Two: Jury Instructions

In Ground Two, Petitioner contends that the Minnesota state district court erred "in its instructions to the jury by incorrectly defining 'sexual penetration' as including 'any object held' by one person when the statute defines 'sexual penetration' to include 'any object used by a person.'" (Pet. [Docket No. 1], at 7) (emphasis in original). In other words, Petitioner argues that the jury instructions were erroneous because the definition of "sexual penetration" was not recited verbatim from Minn. Stat. § 609.341 subd. 12. (Id.; Pet'r's Traverse [Docket No. 16], at 29–32).

"[T]he fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle, 502 U.S. at 71–72; see also, Louisell v. Dir. Of Iowa Dep't of Corr., 178 F.3d 1019, 1022 (8th Cir. 1999) ("The formulation of jury instructions primarily concerns the application and interpretation of state law."). "Habeas corpus relief may be granted only when an erroneous jury instruction constituted 'a fundamental defect' that resulted 'in a complete miscarriage of justice, [or] an omission inconsistent with rudimentary demands of a fair trial.'" Louisell, 178 F.3d at 1022 (quoting Crump v. Caspari, 116 F.3d 326, 327 (8th Cir. 1997)); see also, Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)) ("The only question for us is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'").

Here, Petitioner primarily presents Ground Two as an issue of state law. (Pet. [Docket No. 1], at 7; Pet'r's Traverse [Docket No. 16], at 29–32). To the extent that he merely argues the jury

instruction was incorrect under Minnesota Law, Petitioner's jury instruction claim is not cognizable for habeas review. See, e.g., Estelle, 502 U.S. at 71–72. Nevertheless, he does generally assert that he "was denied his fundamental right to a jury trial on every element of the criminal sexual conduct in the first degree offense because the jury was improperly instructed," and "[t]herefore, the judicial proceeding was unfair." (Pet'r's Traverse [Docket No. 16], at 32). To the extent that Ground Two can be construed as a cognizable habeas due process claim, this Court finds that the federal basis for that claim was not fairly presented to the Minnesota Supreme Court, and it is now procedurally defaulted.

"A state prisoner must first exhaust state court remedies before seeking federal habeas relief. This gives the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Foster v. Fabian, No. 7-cv-4317 (JRT/JJG), 2009 WL 921063, *3 (D. Minn. Mar. 31, 2009) (citations and quotations omitted). To satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present all of his federal law claims to the highest available state court before seeking habeas corpus relief in federal court. O'Sullivan, 526 U.S. at 845; Duncan, 513 U.S. at 365–66; McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("[B]efore we may reach the merits of a habeas petition, we must first determine whether the petitioner has fairly presented his federal constitutional claims to the state court"). "A petitioner must present both the factual and legal premises of his claims to the state courts in order to exhaust the claims properly." Vang v. Roy, No. 17-cv-71 (JNE/TNL), 2017 WL 4542898, at *4 (D. Minn. Sept. 12, 2017), report and recommendation adopted by 2017 WL 4535918 (D. Minn. Oct. 10, 2017) (quoting Dansby v. Hobbs, 766 F.3d 809, 823 (8th Cir. 2014)); see also, Gray v. Netherland, 518 U.S. 152, 162–63 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas

corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief.").

In relevant part, Petitioner argued in his petition for further review by the Minnesota Supreme Court that the trial court committed plain error because the jury instruction did not accurately provide the definition of "sexual penetration" as provided in Minn. Stat. § 609.341, subd. 12. (Pet. for Review of Court of Appeals' Decision [Docket No. 6-5], at 4, 13–14). As such, Petitioner presented his jury instruction claim to the Minnesota Supreme Court solely as a matter of state law, without referencing any federal basis for that claim. (See, Id.). Thus, Petitioner did not "fairly present" the legal premises for Ground Two of the present Petition to the Minnesota Supreme Court.

> If a petition contains claims that have not been fairly presented, the court must then determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if it has not been fairly presented in one complete round of the state's established appellate review process, but the petitioner has the right, under state law, to raise the claim by any available procedure. A constitutional claim is procedurally defaulted if the state prisoner fails to exhaust his state court remedies with respect to that claim and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim.

Foster, 2009 WL 921063, at *3 (citations omitted).

Petitioner did not, but more importantly he can no longer, fairly present his claim that the jury instructions violated his federal due process right to a fair trial to the Minnesota Supreme Court. In State v. Knaffla, the Minnesota Supreme Court held that when an issue is or could have been litigated on direct appeal, it may not be brought in a subsequent, collateral appeal.[2] 243

---

[2] "There are two exceptions to the Knaffla rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review." Schleicher v. State, 718 N.W.2d 440, 447 (Minn. 2006) (quotations omitted). Neither exception is applicable in this case.

N.W.2d 737 (Minn. 1976). Here, Petitioner's claim challenging the jury instructions on federal grounds could have been fairly (but was not) presented in his previous petition for further review by the Minnesota Supreme Court. (See, Pet. for Review of Court of Appeals' Decision [Docket No. 6-5], at 4, 13–14). Therefore, it may not again be raised in any subsequent state appeal. See, Knaffla, 243 N.W.2d at 741. Accordingly, Petitioner's claim challenging the jury instructions on federal due process grounds asserted as Ground Two in the present Petition is procedurally defaulted. See, Id.

> If a claim is procedurally defaulted on federal habeas review, a federal court may hear the petition only under two limited circumstances: (1) if the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged violation of federal law; or (2) if the court's failure to consider the claim will result in a fundamental miscarriage of justice.

Kindred v. Titus, No. 17-cv-620 (SRN/HB), 2017 WL 6987990, at *3 (D. Minn. Dec. 27, 2017) (citing McCall, 114 F.3d at 758), see, also, Coleman v. Thompson, 501 U.S. 722, 750 (1991) (setting forth circumstances under which federal habeas review of procedurally defaulted claims is available).

> To establish cause for the default, a petitioner generally must show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. To establish prejudice, the petitioner must show that the errors of which he complains worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. A court need not consider prejudice unless the petitioner demonstrates cause.

Kindred, 2017 WL 6987990, at *3 (citations and quotations omitted); accord, Coleman, 501 U.S. at 753. To establish a fundamental miscarriage of justice, a petitioner must "show, based on new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995); accord, Kindred, 2017 WL 6987990, at *3 (citing McCall, 114 F.3d at 758). "If neither exception applies, the procedural

default cannot be excused, and the court should deny the petition without reaching the merits of the claims." Kindred, 2017 WL 6987990, at *3.

Here, Petitioner has not articulated in any way the cause for his procedural default. (See, Pet. [Docket No. 1]; Pet'r's Traverse [Docket No. 16]). Since Petitioner has not satisfied the cause component required to overcome the foregoing claims' procedural default, it is unnecessary to address the prejudice component. See, Coleman, 501 U.S. at 753; Kindred, 2017 WL 6987990, at *3. Likewise, Petitioner cannot meet the "fundamental miscarriage of justice" exception because he failed to present any "reliable new evidence" providing clear and convincing proof that he is actually innocent. See, Brownlow, 66 F.3d at 999; Kindred, 2017 WL 6987990, at *3. As such, Petitioner's procedural default of Ground Two of the Petition cannot be overcome and this Court is precluded from adjudicating these claims on the merits.

Therefore, the Court recommends that Petitioner's claim challenging the jury instructions on federal due process grounds asserted as Ground Two of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that it be **dismissed with prejudice**.[3]

### ii. Grounds Three and Four: Admission of Evidence

In Ground Three, Petitioner contends that the Minnesota state district court erred "by admitting unfairly prejudicial Spreigl and relationship evidence that [Petitioner] filmed the victim's older sister in the bathroom and her bedroom when the claimed acts of filming were not markedly similar to the charged offense against the victim, where the potential for unfair prejudice greatly outweighed any probative value, and where the filming was not domestic conduct under Minn. Stat. § 634.20." (Pet. [Docket No. 1], at 8). In Ground Four, Petitioner contends that the Minnesota state district court "err[ed] and violated [Petitioner's] right to a fair trial by allowing

---

[3] See, Bush v. Smith, No. 17-cv-3129 (WMW/SER), 2018 WL 542693, *1-2 (D. Minn. Jan. 24, 2018) (dismissing with prejudice habeas claims which were procedurally defaulted).

14

the state to introduce irrelevant and prejudicial evidence that: 1) the victim reported to a school counselor that she was depressed and had thoughts of harming herself; and that 2) [Petitioner] had viewed teen-themed pornography videos." (Id. at 10). Petitioner further contends that those errors violated his right to a fair trial. (Id. at 8; Pet'r's Traverse [Docket No. 16], at 34–35, 37).

"Generally, in the habeas context, '[q]uestions regarding admissibility of evidence are matters of state law.'" Sitter v. Bowersox, 969 F.3d 846, 849 (8th Cir. 2020) (alteration in original) (quoting Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006)). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Id. (quoting Bucklew v. Lubbers, 436 F.3d 951, 958 (8th Cir. 2006)).

Here, Petitioner primarily presents Grounds Three and Four as issues of state law. (Pet. [Docket No. 1], at 8, 10; Pet'r's Traverse [Docket No. 16], at 32–36). To the extent that he merely argues that the state court erred in applying Minnesota law or the Minnesota Rules of Evidence, Petitioner's admissibility of evidence claims are not cognizable for habeas review. See, e.g., Sitter, 969 F.3d at 849. Nevertheless, Petitioner here too asserts in a wholly conclusory manner that the admission of evidence violated his right to a fair trial. (Pet. [Docket No. 1] at 10; Pet'r's Traverse [Docket No. 16], at 34–35, 37). To the extent that Grounds Three and Four can be construed cognizable habeas due process claims, this Court finds that the federal basis for those claims were also not fairly presented to the Minnesota Supreme Court, and they are now procedurally defaulted.

As set forth above, to satisfy the exhaustion of state court remedies requirement, a prisoner must fairly present all of his federal law claims to the highest available state court before seeking habeas corpus relief in federal court. O'Sullivan, 526 U.S. at 845; Duncan, 513 U.S. at 365–66; McCall, 114 F.3d at 757. "A petitioner must present both the factual and legal premises of his

claims to the state courts in order to exhaust the claims properly." Vang, 2017 WL 4542898, at *4 (quoting Dansby, 766 F.3d at 823).

In relevant part, Petitioner argued in his petition for further review by the Minnesota Supreme Court that the trial court committed plain error by wrongfully admitting evidence under Minn. Stat. § 634.20 and Spreigl (Ground Three), as well as, by wrongfully admitting evidence that was not relevant and prejudicial (Ground Four). (Pet. for Review of Court of Appeals' Decision [Docket No. 6-5], at 4–5, 14–16). Although, in relation to Ground Four, Petitioner generically referenced his "right to a fair trial," he did not fairly present the federal legal premises of his claims to the Minnesota Supreme Court. (See, Id. at 5). "[I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Gray, 518 U.S. at 163; accord, Turnage v. Fabian, 606 F.3d 933, 936 (8th Cir. 2010). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue" in a claim before the state courts.'" McCall, 114 F.3d at 757 (quoting Myre v. State of Iowa, 53 F.3d 199, 200–01 (8th Cir. 1995)); see also, Wyldes, 69 F.3d at 251 ("At a minimum, though, the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law.").

"[P]resenting a claim to the state courts that is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Abdullah, 75 F.3d at 412. In his petition for further review by the Minnesota Supreme Court, Petitioner did not specifically cite to the U.S. Constitution or any federal case law, and "although the Due Process Clause and right to fair trial are federal constitutional provisions, the Minnesota Constitution equally confers due process and

16

fair trial rights." <u>Krieger</u>, 2015 WL 470811, at *7 (citing Minn. Const. art. I). Petitioner's mere broad reference to his "right to a fair trial" was insufficient to fairly present the substance of this claim to the Minnesota Supreme Court. <u>See</u>, <u>Id.</u> ("As the Magistrate Judge correctly determined, [the petitioner's] 'mere allusions' to his right to due process and a fair trial did not put the Supreme Court on notice that [the petitioner] was basing this challenge on either the federal Constitution, a federal constitutional case, or a state case raising a pertinent federal constitutional issue, as opposed to comparable and overlapping state constitutional provisions.").

Therefore, Petitioner here did not "fairly present" his admission of evidence due process claims asserted as Grounds Three and Four of the present Petition to the highest available state court. Because Petitioner's claims could have been (but were not) presented to the Minnesota Supreme Court, they may not again be raised in a subsequent state appeal. <u>See</u>, <u>Knaffla</u>, 243 N.W.2d at 741. As a result, Petitioner's admission of evidence due process claims asserted as Grounds Three and Four of the present Petition are procedurally defaulted. <u>See</u>, <u>Id.</u> In addition, Petitioner has not satisfied the cause component to overcome his claims' procedural default, nor can he meet the "fundamental miscarriage of justice" exception. <u>See</u>, <u>Coleman</u>, 501 U.S. at 753; <u>Brownlow</u>, 66 F.3d at 999; Kindred, 2017 WL 6987990, at *3. As such, Petitioner's procedural default cannot be overcome, and this Court is unable to adjudicate these claims as well.

Accordingly, the Court recommends that Petitioner's admission of evidence claims asserted as Grounds Three and Four of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that they be **dismissed with prejudice**.

### B.  Ground One: Insufficient Evidence

In Ground One, Petitioner contends that "the evidence was insufficient as a matter of law to convict [him] of first degree criminal sexual conduct where the state's evidence did not establish the element of penetration." (Pet. [Docket No. 1], at 5).

Petitioner's argument largely hinges on his assertion that the Minnesota state courts misinterpreted the definition of "sexual penetration" provided in Minn. Stat. § 609.341, subd. 12. Indeed, Petitioner specifically states that Ground One "requires statutory interpretation of the phrase 'any object used' in the definition of 'sexual penetration.'" (Pet'r's Traverse [Docket No. 16], at 26). This Court "lack[s] the authority to review the Minnesota State Courts' interpretation and application of state law, for 'federal habeas corpus relief does not lie for errors of state law . . . [and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" Evenstad v. Carlson, 470 F.3d 777, 782 (8th Cir. 2006) (quoting Estelle, 502 U.S. at 67–68). Thus, to the extent that Ground One focuses on the interpretation of a state statute, it is not properly before the Court in the present Petition for habeas relief. See, e.g., Poole v. Wood, 45 F.3d 246, 249 (8th Cir. 1995) ("[T]he alleged wrongful interpretation of state criminal statutes cannot be decided in a federal habeas corpus action.").

Moreover, to the extent that Ground One can be broadly construed even as a question of federal law, it was not fairly presented to the Minnesota Supreme Court. In his request for further review, Petitioner presented his insufficient evidence claim as a "novel issue[] of statutory interpretation," and Petitioner argued that the Minnesota Supreme Court "should grant review . . . to actually decide whether a complainant's underwear wedged in her vagina incidental to touching can qualify as an 'object used' for penetration under the first degree criminal sexual conduct statute." (Pet. for Review of Court of Appeals' Decision [Docket No. 6-5], at 12–13). Because

Petitioner's insufficient evidence claim was presented to the Minnesota Supreme Court as an issue of state law statutory interpretation, the federal basis for that claim was not fairly presented to the Minnesota Supreme Court. See, Cole v. Hopkins, 56 Fed. App'x 742, 744 (8th Cir. 2003) ("Repackaging the claim in due process wrappings does not transform a state law claim into a federal claim.").

Nevertheless, this Court recognizes that the Eighth Circuit has held that "[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992). Therefore, out of an abundance of caution, this Court will consider Petitioner's insufficient evidence claim asserted as Ground One of the present Petition on its merits without first deciding the issue of procedural default. See, Barret v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. 1999) ("Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated.").

"In assessing whether there is sufficient evidence to support [a Petitioner's state court conviction], 'the scope of our review is . . . extremely limited.'" Sera v. Norris, 400 F.3d 538, 543 (8th Cir. 2005) (quoting Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003)). The Court's role is to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In making its analysis, the Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and [it] must defer to that resolution." Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002) (internal quotation marks omitted); Sera, 400 F.3d at

543 (explaining that the "standard recognizes that it is the province of the fact-finder, not this court, 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'"). It is not this Court's role to "reweigh the evidence." Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996). "To the contrary, [this Court] must accord 'great deference' where a state appellate court has found the evidence supporting the conviction constitutionally sufficient . . . ." Id. "[T]his Court presumes the findings of fact made by the Minnesota courts are correct unless Petitioner rebuts the presumption by clear and convincing evidence." Raisch v. King, No. 10–1979 (PAM/JJK), 2011 WL 1261602, at *5 (D. Minn. Mar. 10, 2011); 28 U.S.C. § 2254(e)(1) (stating that "[t]he applicant [has] the burden of rebutting the presumption of correctness by clear and convincing evidence").

Petitioner was convicted of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(b). Marshalek, 2018 WL 4855406, at *1–2. "To convict [Petitioner] of first-degree [criminal sexual conduct], the state had to prove, in part, that he engaged 'in sexual penetration with another person.'" Id. at *2 (quoting Minn. Stat. § 609.342, subd. 1(b)). Petitioner contends in Ground One of the present Petition that the state presented insufficient evidence to prove "sexual penetration." (See, Pet. [Docket No. 1], at 5; see also, Pet'r's Traverse [Docket No. 16], at 24–27). "Sexual Penetration" is defined as including "any intrusion however slight into the genital or anal openings . . . of the complainant's body by any part of the actor's body or any object used by the actor for this purpose." Minn. Stat. § 609.341, subd. 12.

Petitioner contends that sexual penetration was not established because M.M. "consistently maintained that Petitioner did not put his fingers in her vagina," and M.M.'s testimony does not establish that her "underwear was an 'object used' by Petitioner to penetrate her vagina." (Pet'r's Traverse [Docket No. 16], at 24–25). Petitioner further contends that M.M.'s recorded statement,

which was introduced as evidence, indicates the opposite because she stated that Petitioner "wouldn't put his fingers inside of [her]." (Pet. [Docket No. 1], at 5). "To withstand a Fourteenth Amendment challenge to the sufficiency of the evidence, however, '[t]he evidence need not exclude every reasonable hypothesis other than guilt.'" Jackson v. Beltz, No. 20-cv-1978 (PAM/KMM), 2021 WL 1795635, at *9 (D. Minn. Apr. 5, 2021), report and recommendation adopted by 2021 WL 1785228 (D. Minn. May 5, 2021) (quoting United States v. Searing, 984 F.2d 960, 963 (8th Cir. 1993)). "The key question for this Court remains whether—after viewing the evidence in the light most favorable to the prosecution—'*any* rational trier of fact could have found guilt beyond a reasonable doubt.'" Id. (emphasis in original) (quoting Jackson, 443 U.S. at 319).

M.M. also testified that Petitioner would "press his fingers against [her] vagina," on one occasion Petitioner "touched her bare vagina," and when Petitioner touched her vagina through her underwear, "it resulted in 'kind of a wedgy, but in the front.'" (See, Pet. for Review of Court of Appeals' Decision [Docket No. 6-5], at 10; Pet'r's Traverse [Docket No. 16], at 11). In viewing the evidence in the light most favorable to the prosecution, this Court finds that there was sufficient evidence for a rational trier of fact to find that the element of "sexual penetration" had been established beyond a reasonable doubt. See, Auringer v. State, 695 N.W.2d 640, 645 (Minn. Ct. App. 2005) ("Accordingly, applying the plain meaning of the statutory definitions used in the first-degree criminal sexual conduct statute, we conclude that [the defendant's] insertion of his fingers into [the victim's] vagina through her clothing constituted sexual penetration."); State v. Shamp, 422 N.W.2d 520, 526 (Minn. Ct. App. 1988) (finding that "there was sufficient evidence for the jury to reasonably find penetration" where the victim "testified that when [the defendant] touched

her genital area, he would rub his fingers between the folds of skin over her vagina, but not insert his fingers 'all the way'").

Petitioner is merely asking this Court to reweigh the conflicting evidence presented at trial and to reach a different conclusion then the jury and the Minnesota Court of Appeals. As already noted, it is not this Court's role to "reweigh the evidence." Hill, 96 F.3d at 1088. Moreover, "this Court presumes the findings of fact made by the Minnesota courts are correct unless Petitioner rebuts the presumption by clear and convincing evidence." Raisch, 2011 WL 1261602, at *5; see also, 28 U.S.C. § 2254(e)(1). "Petitioner's argument about the sufficiency of the evidence is best categorized as 'reargu[ment of] the evidence in the record seeking the opposite outcome,' rather than a direct attack on the Minnesota Court of Appeals' factual determinations." Jackson, 2021 WL 1795635, at *10 (alterations in original) (quoting Fredrickson v. Minnesota, No. 16-cv-2829 (PJS/TNL), 2017 WL 9672389, at *6 (D. Minn. Dec. 29, 2017), report and recommendation adopted by 2018 WL 1705264 (D. Minn. Apr. 9, 2018). Accordingly, this Court further finds that Petitioner has failed to show by clear and convincing evidence that any findings of fact made by the Minnesota courts were incorrect.

Therefore, the Court recommends that Petitioner's sufficiency of evidence claim asserted as Ground One of the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED** and that it be **dismissed with prejudice**.

## V.    CERTIFICATE OF APPEALABILITY

One further issue merits discussion: A habeas corpus petitioner seeking relief pursuant to § 2254 cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability (hereinafter "COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e.g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

## VI.    CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for a Writ of Habeas Corpus, [Docket No. 1], be **DENIED**; and

2. This action be **DISMISSED with prejudice**.

Dated: June 14, 2021                                 s/Leo I. Brisbois
                                                     Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).